UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHANIE BAGGETT,

     Plaintiff,                               Case No. 1:19-cv-1061

vs.

                                          Magistrate Judge Bowman

CITY OF CINCINNATI,

     Defendant.

**MEMORANDUM OF OPINION AND DECISION**

Plaintiff brings this action through counsel against defendant City of Cincinnati (hereinafter, "the City") alleging that defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This matter is now before the Court on the Defendant's motion for summary judgment (Doc. 23); Defendant's proposed undisputed facts with supporting depositions and attachments (Doc. 27); Plaintiff's memorandum and supporting attachments, including her response to Defendant's undisputed facts (Docs. 28, 29, 30, 31), as well as Defendant's reply memorandum (Doc. 33). Also before the court is Defendants' motion to strike the Affidavits of Stephanie Baggett and Jeremy McCleese filed May 25, 2021.

The parties' have consented to disposition of this matter by the magistrate judge. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein,

**I. Background and Facts**

Plaintiff has been employed by the City since 1990. She started as a seasonal Municipal Worker in Public Services. (Doc. 20, Doc. 1). She took a position with the Metropolitan Sewer District (MSD) as a storekeeper in 2015 and after her training period was permanently placed at the Little Miami location. (Doc. 20 PAGEID #2145-2150).

During that time, Plaintiff was not allocated overtime. (Doc 20, PAGEID #2173, 2180; Doc. 21 PAGEID #1825-1826).

Plaintiff identifies three male storekeepers, Andy Messer ("Messer"), a Caucasian male; Rick McGuire ("McGuire"), an African American male; and Perry Rolf ("Rolf"), a Caucasian male, that she claims received all the overtime while none was offered to her. (Doc. 20-2, PAGEID #602; Doc. 20-3, PAGEID #611-612). Messer, McGuire and Rolf were assigned to the Millcreek (aka Gest Street) and Main Storerooms. (Doc. 20-3, PAGEID #611-612).

 The City contends that in late 2017 Vanessa Smedley, an African American female who was the Superintendent of Wastewater Treatment of MSD, changed the way overtime was allocated.  Ms. Smedley made this change because MSD management was trying to implement a "virtual village" storeroom concept which required all storekeepers to be cross trained among the various locations. (Doc. 21, PAGEID #1823-1834; Doc. 20-10, PAGEID #1471).

Prior to the change in late 2017, Ms. Smedley testified that overtime was allocated by operational need at a given location and based on classification and ability to do the job. Plaintiff was not offered overtime because no overtime was needed at the location in which she worked as overtime was offered by plant location and not by workgroup. (Doc. 21 PAGEID #1825-1826; Doc. 20-10, PAGEID #1471; Doc. 20-9, PAGEID #1432).

 The Little Miami plaint where Plaintiff worked is a smaller plant. Mill creek, on the other hand, is a much larger plant and employs the majority of the storekeepers. (Doc 21, PAGEID #1825).  Little Miami did not have operational need for overtime during the relevant time. (Doc. 21, PAGE ID #1825-1828; Doc. 21-1, PAGEID #1892).

The change in overtime implemented by Ms. Smedley allowed overtime to be split among all storekeepers, regardless of their primary location. When this change was made, Plaintiff was allocated overtime. (Doc. 21, PAGEID #1823-1834; Doc. 21-2, PAGEID #1981).

Plaintiff asserts, however, that overtime policies were set by union contract.  In this regard, Plaintiff filed two grievances alleging that she was unfairly denied overtime opportunities. The first grievance was granted by Ms. Smedley and Plaintiff was given an opportunity to make up for a lost overtime opportunity for one specific date, Nov. 3, 2017. (Doc. 21-5, PAGEID #2012). Ms. Smedley was in the process of changing the overtime policy and wanted Plaintiff to be able to participate in the overtime opportunity on that particular date. (Doc. 21, PAGEID#1870-1871; Doc. 21-5, PAGEID#2011).  Plaintiff then filed a second grievance, which was an amendment to the first grievance, and challenged the way overtime was allocated to Plaintiff in 2017. (Id. at PAGID #2016). This later grievance was denied by Ms. Smedley. (Id. at PAGEID #2020).

Thereafter, Plaintiff filed the instant action on December 13, 2019 alleging race and gender discrimination.[1]  The City now moves for summary judgment.

**II. Analysis**

**A.  Summary Judgment Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted).  "Summary judgment is only appropriate 'if the pleadings,

---

[1] On April 27, 2021 Plaintiff withdrew her claim for race discrimination based upon a failure to promote. (Doc. 25).

3

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the

record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins.Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

## B. Plaintiff's discrimination claims

1. *Applicable Law*

Title VII provides that "it shall be an unlawful employment practice for an employer…to discriminate against any individual…because of such individual's race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e-2(a). To establish a prima facie claim of sex discrimination under Title VII, Plaintiff must satisfy the three-step burden-shifting set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802- 803, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), *Kirkland v. James*, 154 F. Supp. 3d 608, 616 (S.D. Ohio 2015). Plaintiff must show (a) that she was a member of a protected class, (b) she was subjected to an adverse action, and (c) another similarly situated employee, not in a protected class, was treated more favorably. Id. citing *Scheidemantle v. Slippery Rock Univ. State Sys. Of Higher Educ.,* 470 F.3d 535, 539 (3d Cir. 2006) (citing *McDonnell Douglas Corp*., 411 U.S. at 802-803). If Plaintiff makes out a prima facie claim, the burden shifts to the Defendant to establish "a legitimate nondiscriminatory reason" for its alleged discriminatory acts. Id. citing *Scheidemantle*, 470 F.3d at 539. If Defendant provides such a reason, Plaintiff must then show that the proffered reason is merely pretext for actual

discrimination. Id

An employee may base his claim of employment discrimination on a theory of disparate impact or disparate treatment or both. *Lynch v. Freeman*, 817 F.2d 380, 382 (6th Cir. 1987). In the instant case, plaintiff proceeds under the disparate treatment theory of discrimination. Under the disparate treatment theory, the plaintiff must show that the employer has treated some people less favorably than others because of their race, color, religion, sex or national origin. Unlike the disparate impact theory, proof of discriminatory motive is critical in the case of disparate treatment. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 92 (6th Cir. 1982) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Claims of disparate treatment are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002); *Mitchell*, 964 F.2d at 582. The *McDonnell Douglas* burden-shifting analysis requires that plaintiff first establish a *prima facie* case of discrimination. *Id*.

A plaintiff may establish a *prima facie* discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id*.

A plaintiff who lacks direct evidence of discrimination may establish a *prima facie*

case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost; and 4) he was replaced by an individual outside the protected class. *Mitchell,* 964 F.2d at 582.  Plaintiff may also establish the fourth prong of a *prima facie* case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class.  *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff seeks to establish that he was treated less favorably than a similarly-situated individual, he must prove that all relevant aspects of his employment situation were similar to those of the employee with whom he seeks to compare himself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).  To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id*. (quoting *Mitchell,* 964 F.2d at 583); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000).  The determination of whether the plaintiff and another employee shared the same supervisor must be made "on a case-by-case basis and does not depend entirely on whether the two shared the same immediate supervisor."  *Barry v. Noble Metal Processing, Inc.*, 276 Fed. Appx. 477, 481 (6th Cir. 2008) (citing *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005)).  "[I]n many instances, the term 'supervisor' should be construed broadly to include cases where both employees' situations were handled by the same 'ultimate decision-maker.'" *Id*. (citing *McMillan*, 405 F.3d at 414).  Accordingly,

7

a plaintiff and a comparable employee who are directly supervised by different individuals may still be similarly situated if the same member of management disciplined both of them. *Id*. (citing *McMillan*, 405 F.3d 405; *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 459 (6th Cir. 2003)).

"[T]he weight to be given to each factor can vary depending upon the particular case." *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). The ultimate question is whether employees involved in acts of "comparable seriousness" were nonetheless retained. *Clayton*, 281 F.3d at 611 (citing *McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 283 n.11 (1976)).

The employer is entitled to summary judgment if the plaintiff does not establish a *prima facie* case. If the plaintiff establishes a *prima facie* case, the employer can overcome the *prima facie* case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id*. at 804.

The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Services,* 129 S.Ct. 2343 (2009). The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, *i.e.*, the reason is factually false. *Id*. The third showing ordinarily consists of evidence that other employees, particularly those outside

the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id*. If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id*. For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, the plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id*.

The Sixth Circuit has cautioned that *Manzer's* three-part test is not to be applied in a formalistic manner. *See Chen v. Dow Chemical Co*., 580 F.3d 394, 400 n.4 (6th Cir. 2009). Rather, the court must bear in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id*. The court must ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong the evidence is. *Id*. The 6th Circuit in *Chen* explained,

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148 (2000). ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id*.

A plaintiff must allege more than a dispute over the facts upon which the discharge was based in order to establish pretext. *Braithwaite v. Timken Co*., 258 F.3d 488, 493-

494 (6th Cir. 2001). He must put forth evidence that demonstrates the employer did not "honestly believe" in the proffered nondiscriminatory reason for its adverse employment action. *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). An employer has an honest belief in its nondiscriminatory reason for discharging the employee "where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Chrysler Corp.*, 155 F.3d at 807). In determining whether an employer "reasonably relied on the particularized facts then before it," it is not necessary that "the decisional process used by the employer be optimal or that it left no stone unturned." *Braithwaite*, 258 F.3d at 493 (quoting *Chrysler Corp.*, 155 F.3d at 807). "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (citing *Chrysler Corp.*, 155 F.3d at 807). As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Majewski*, 274 F.3d at 1117 (citing *Chrysler Corp.*, 155 F.3d at 806).

Summary judgment in favor of a defendant is appropriate where the plaintiff fails to establish a *prima facie* case or is unable to demonstrate pretext sufficient to rebut the defendant's legitimate, non-discriminatory reasons. *Barnhart v. Peckrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1395 (6th Cir. 1993). "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination *and* that the employer intended to discriminate on the basis of race." *Thurman*, 90 F.3d at 1166 (emphasis in the original) (citing *Hicks*, 509 U.S. at 502). The

10

finder of fact may infer discrimination from the elements of a prima facie case, coupled with its disbelief of the rationale articulated by the employer.  *See Hicks,* 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination . . . 'no additional proof of discrimination is required. . . .').  *See also Barnett v. Department of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998); *E.E.O.C. v. Yenkin-Majestic Paint Corp.,* 112 F.3d 831, 835 (6th Cir. 1997); *Thurman,* 90 F.3d at 1166-67.

> *2.  Prima Facie Case of Gender Discrimination*

Defendant argues that it is entitled to judgment as a matter of law because Plaintiff cannot establish the second and third prongs of a *prima facie* case of gender discrimination. Notably, Defendant contends that Plaintiff cannot demonstrate that she suffered an adverse action or that other similarly situation employees were treated more favorably.  Defendants' contentions will be addressed in turn.

> *A. Adverse Action*

The Sixth Circuit has defined an adverse employment action as a materially adverse change in the terms and conditions of [a plaintiff's] employment. *Evans v. D.E. Foxx & Assocs.*, S.D. Ohio No. 11-261-HJW-JGW, 2013 U.S. Dist. LEXIS 104375 at *18-19 (July 24, 2013) citing *Leavey v. City of Detroit*, 467 Fed.Appx. 420, 425 (6th Cir. 2012). Adverse employment actions typically involve a significant change in employment status, including hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits. Id.

The City contends that Plaintiff started as a storekeeper with MSD in March 2015. (Doc 20, PAGEID #20145-2146). "Prior to December 4, 2017, OT was offered by plant not work group." (Doc 20-10, PAGEID # 1471). As the overtime allocation was already in effect when Plaintiff began her position as a storekeeper, there was never a change in her benefits. Accordingly, the City maintains that Plaintiff did not suffer an adverse action during the time she was not afforded overtime hours.

Plaintiff, however, argues that Courts have found that when overtime and comp time opportunities materially affect compensation, a denial of such opportunities constitutes an adverse action. *See Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008). 529 F.3d at 970.  Furthermore, a difference in compensation has been ruled as an adverse employment action under Title VII. *See Gillis v. Georgia Department of Corrections*, 400 F.3d 883, 888 (11th Cir.2005); *McCabe v. Sharrett*, 12 F.3d 1558, 1564 (11th Cir.1994).

The Sixth Circuit has recognized that "allegations of a denial of overtime, properly supported, could constitute an adverse employment action." *Broska v. Henderson,* 70 Fed.Appx. 262, 268 (6th Cir.2003). However, plaintiffs proceeding on this theory must demonstrate that they have "been denied overtime opportunities that others have received" and show "how much overtime [they] lost...." *Id. See also Hall v. Chapman*, No. 4:15-CV-13771, 2016 WL 7383685, at *4 (E.D. Mich. Dec. 21, 2016) ("at the very least, Plaintiff's proposed first amended complaint alleges that he was subjected to adverse action when  Defendant Chapman docked Plaintiff's pay, took Plaintiff off the overtime list, and started rumors); *Broska v. Henderson,* 2003 WL 21518733 (6th Cir.

June 30, 2003) (the denial of overtime does not constitute an adverse action absent evidence reflecting the amount of overtime lost and evidence that similarly-situated employees received the overtime plaintiff was denied); *Gates-Lacy v. Cleveland Dep't of Pub. Safety*, Case No. 1:09CV2593, 2011 WL 4368921, at 15-16, fn 2. (N.D. Ohio Sept. 19 2011) (Lost overtime opportunities can amount to an adverse employment action when the lost opportunities were "both relatively regular in their occurrence and significant in their monetary impact).

Though this a close call, viewing the facts in the light most favorable to the Plaintiff, the undersigned finds that Plaintiff's denial of overtime could constitute adverse action.

*B. Similarly situated*

The City next argues that Plaintiff cannot establish that other similarly situation employees were treated more favorably.  To be treated as similarly-situated, an employee must "have dealt with the same supervisor [as the plaintiff], have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583.   Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated. *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801, 802 (6th Cir. 1994), abrogated on other grounds by *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 148 (2000), as recognized in *Carter v. Toyota Tsusho America, Inc.*, 529 F. App'x 601, 608–10 (6th Cir.2013).

The plaintiff need not demonstrate similarity in all respects; and the Court should evaluate the factors discussed in *Mitchell*, to the extent they are relevant to the particular

circumstances of the case. *See Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Thus, Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)).

Plaintiff argues that she is similarly situated to three male shopkeepers, Messer, McGuire and Rolf, and that they received more favorable treatment. (See Doc. 20-3, PAGEID #611-612). The City, however, argues that Plaintiff fails to demonstrate she was similarly situated to these individuals in all relevant respects. In this regard, the City contends Plaintiff was a storekeeper at the Little Miami Storeroom while Messer, McGuire and Rolf were assigned to the Gest Street CMF and Main Storerooms. (Doc. 20, PAGEID #2148; Doc 20-3, PAGEID #611-612). Because they were not working at the same location as Plaintiff, they are not similar in all relevant respects. Moreover, the location these individuals were working at is important because prior to December 4, 2017, overtime was offered by plant, not work group. (Doc 20- 10, PAGEID #1471). Further, there is evidence in the record that overtime was not needed at the Little Miami Storeroom when Plaintiff was told "eventually we're going to have some overtime out here at Little Miami…" (Doc 20, PAGEID #2178). Therefore, in order for Plaintiff to demonstrate someone situated outside a protected class was treated more favorably than her, the City argues that she needs to point to a storekeeper who, like her, works at the Little Miami Storeroom.

Plaintiff responds that Defendant's contention is unavailing because: 1) her initial

badging was for all locations, and she had possession of keys to all locations; 2) her title is storekeeper, just as the men; 3) she shared the same supervisor as the males; 4) the easy transition of male employees between the other two locations, and also their working in Little Miami (which shows that location is not important in terms of assigning overtime) and 5) the fact that Plaintiff herself worked at Mill Creek after morning meetings without difficulty. In addition, Plaintiff worked on the same computer software as her comparators and she was doing the same duties. She contends that a slight difference in merchandise and inventory is not sufficient to distinguish her from her comparators; the requirement is that she be similarly situated, not identically situated. The undersigned agrees. [2]

3. *Defendant's legitimate non-discriminatory reason for Plaintiff not being offered overtime and Plaintiff's arguments regarding pretext*

Even though the Court finds that Plaintiff has established a *prima facie* case of gender discrimination, the City argues that it has a legitimate, nondiscriminatory business purpose for its actions, namely that overtime was allocated by location of operational need. In this regard, the City contends that Plaintiff testified that she was the only storekeeper working at the Little Miami location. (Doc. 20, PAGEID #2163). The record establishes that Little Miami was a smaller plant that did not have operational need for

---

[2] The City further argues that if the Court finds the storeroom location where comparators work is not relevant in its determination of whether they are similarly situated to Plaintiff, it should also find Dave Stutzman ("Stutzman") is similarly situated in all relevant respects. In this regard, Stutzman identifies as a Caucasian male and worked with Messer, McGuire and Rolf as a storekeeper at the Mill Creek location (aka Gest Street Main location). (Doc 20, PAGEID #2188). On January 12, 2018, Stutzman filed a grievance requesting pay for overtime hours not afforded to him in 2016. (Doc. 20-9, PAGEID #1441). While the grievance was initially denied, the City admitted a wrong was discovered and remedied the situation. (Id. PAGEID #1440-1441). The City contends that Stutzman's inclusion as a comparator delegitimizes Plaintiff's gender discrimination claim as Stutzman is not a member of a protected class and like Plaintiff was not allocated overtime. Plaintiff, however, contends that in contrast to her grievance, male Dave Stutzman complained of not being offered enough overtime. That is, he complained that his overtime was not equalized, and that this failure was intentional and that it was due to a personality conflict with his supervisor. In any event, as explained below, even though Plaintiff has established a prima facie case of discrimination, the City has articulated a legitimate non-discriminatory business purpose for its actions.

overtime while Mill Creek which was a larger plant and did have operational need for overtime. (Doc. 21, PAGE ID#1825-1828; Doc. 21-1, PAGE ID #1898; Doc. 21-5, PAGEID #2020). As such, the City contends that Plaintiff was not offered overtime because she was working at Little Miami. (Id. at PAGEID #1825 and Doc. #20-9, PAGEID #1442). Moreover, the other storekeepers Plaintiff identified as comparators, Rolf, McGuire, and Messer, were permanently assigned to either Mill Creek or CMF, which were larger plants that did have need for overtime. As a result, those employees were offered and worked overtime there. (Doc. 21, PAGE ID 1823-1826, 1828).

Prior to Vanessa Smedley changing the overtime policy in late 2017, the practice was that overtime was based on classification and ability to do the job. (Doc. 21, PAGEID #1818; 1825). Specifically, each storeroom had different makeups, merchandise, and items so if someone was working at the Mill Creek storeroom, they did not work overtime at Little Miami, they did their overtime at Mill Creek. (Id. PAGEID #1825-1826). The Little Miami storeroom where Plaintiff worked did not require overtime as evidenced in Plaintiff's monthly meeting with Tiffany Lawrence-Glenn. Specifically, in one meeting Lawrence-Glenn stated "eventually, we're going to have some overtime out here in Little Miami and you're going to be the first storekeeper that will be offered it." (Doc 20, PAGEID #2178). Based on the foregoing, the City contends it was the operational needs of MSD which determined overtime allocation, not any discriminatory animus. The undersigned finds this to be a legitimate nondiscriminatory reason.

The burden now shifts to the Plaintiff to show that the reasons offered by the City were not its true reasons for denying Plaintiff overtime but were a pretext for discrimination. In this regard, Plaintiff argues that the operational needs of MSD did not

determine overtime; instead overtime policies are set by the union contract and could not be changed by a memorandum from Vanessa Smedley.  (Doc. 28, Aff. Jeremy McCleese paragraphs 2, 3, and 4, Doc. 28-1 PageID 2064 and Exhibit 1 Doc. 28-2 PageID 2066-2068) (Aff. Stephanie Baggett at paragraphs 2, 3, 4, 5, and 6, Doc. 29-1 PageID 2093-2094 and Exhibit A Doc. 29-2 PageID 2096-2098). Plaintiff further argues that the supposed "change in operational needs" was contrived, as the "virtual concept" was never implemented, and Plaintiff simply used the training she had received originally at Mill Creek to perform overtime duties there.  *Id.*

Plaintiff further asserts that the City's claim that she "needed training" to work at Mill Creek is nonsensical.  Plaintiff argues that she trained at Mill Creek and worked there several months. It used the same software as Little Miami for which she had log-in and access. She worked at Mill Creek regularly after morning meetings. Finally, the "training" afforded before she was allowed to finally participate in overtime was for a "virtual storeroom," a concept never implemented. Id.  In light of the foregoing, Plaintiff contends that she was entitled to compete for overtime as she was doing the same job under the same supervisor as the males who were given overtime.

Such assertions, however, fail to establish that the stated reasons for Plaintiff's denial of overtime had no basis in fact; did not actually motivate the Defendant's decision; or were insufficient to warrant the decision.  See *Manzer,* 29 F.3d at 1084.

As noted above, a reason cannot be a pretext for discrimination unless it is shown that the reason is both false and that discrimination was the real reason. *Johnson v. University of Cincinnati,* 215 F.3d 561, 573 (6th Cir.2000) (citing *St. Mary's Honor Center,* 509 U.S. 502, 113 S.Ct. 2742).  To show pretext, an employee may not rely upon his

*prima facie* evidence, but must, instead, introduce additional evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Automotive,* 579 F.3d 614 (6th Cir. 2009). Thus, uncorroborated, conclusory statements and self-serving allegations taken solely from Plaintiff's testimony cannot alone satisfy Plaintiff's burdens. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584 (6th Cir.1992). *See also Evans v. Jay Instrument & Specialty Co.,* 889 F.Supp. 302, 310 (S.D.Ohio 1985) (holding that plaintiff's self-serving conclusory declarations of actual discrimination on the part of the defendant decision makers were insufficient to raise a triable issue of pretext).

Here, in support of her assertions that the City's' stated reasons for the denial of overtime is false, Plaintiff cites to her own affidavit and the affidavit of Jeremy McCleese. (Docs. 28, 29).  Jeremy McCleese is the Vice President of AFSCME Local 240, whose duty is to pursue grievances and be familiar with the negotiated Union contract. (Doc. 28-1, PAGEID#2064).[3]

McCleese's affidavit asserts, *inter alia*, that the Union contract provides that overtime be allocated by "work unit" and not by operational need as outlined by the City. As a result, he opined that Plaintiff should have been offered overtime because she is in the same work unit as her comparators, Messer, McGuire and Rolf.  Namely, the language cited by Plaintiff and McCleese, found at Article 14(F) of the Union contract states that, "The City agrees that every attempt will be made to equalize overtime work throughout the calendar year.  Unless otherwise agreed to . . . overtime lists will be created in each Division or work unit where overtime is regularly used." (Doc. 28-2,

---

[3] The city has moved to strike these affidavits.  However, even assuming the information is admissible, as explained above, the information contained in the affidavits fails to establish pretext.

PAGEID #2067).

As noted by the City, the contract does not define a "division" or "work unit."  There is simply no evidence that supports the definition of a "work unit" as used in Plaintiff's Memo in Opposition or the attached affidavits. Conversely, the AFSCME contract specifically gives management (The City) the right to direct the work of its employees and to determine the methods, means and personnel by which operations are to be carried out.  As such, the City had the right to determine a "work unit where overtime is regularly used," and the uncontroverted testimony is that the City determined this by assigning overtime to employees who worked at locations where there was overtime need and that it varied by department and location. (Doc. 21 PAGEID#1823, 1825, 1826; Doc. 18 PAGEID#206).  Accordingly, the Union contract does not set or define the City's "overtime policy." And Plaintiff herself acknowledged that different City departments can choose different policies, independent of a Union contract. (See Doc. 20, PAGEID #2200).

More importantly, a grievance is the only avenue for which to seek redress for an alleged violation of the Union contract. (See Doc. 33, Exhibit A, Article 17). "A grievance is an allegation by an employee or the Union that the terms of the Agreement between the Union and the City have been violated or misrepresented. When any such grievance arises, the following procedure shall be followed: . . ."  Id. The contract goes on to lay out the steps for grievances to be addressed and it ends at step 5 with arbitration. Id.

As detailed above, Plaintiff filed two grievances regarding her allegation that she was unfairly not awarded overtime per the Union contract. The first grievance was granted by Ms. Smedley and Plaintiff was given an opportunity to make up for a lost overtime opportunity for a specific date, Nov. 3, 2017. The second grievance, which was an

amendment to the first grievance, and sweeping in nature, challenged the way overtime was allocated to Plaintiff in 2017. (Id. at PAGID #2016). This grievance was denied by Ms. Smedley. As noted by the City, there is no response from the Union to the denied grievance in the record, meaning if Mr. McCleese and the Union were concerned about an alleged expansive contract violation, they should have pursued the grievance through arbitration. There is nothing in the record to suggest they did, and that was the proper legal avenue to address the Union contract. (See Doc. 33, Exhibit A, Article 17).

Accordingly, McCleese's testimony in this regard is irrelevant and non-dispositive of the issues asserted in this action, and therefore do not establish a genuine issue of fact as to pretext.

Plaintiff's affidavit also fails to establish pretext. Plaintiff asserts that the City's argument that it could deny her overtime because she was in a different "primary work location" is immaterial and false. She asserted that males worked at Little Miami and that she worked at Mill Creek after meetings. Notably, Plaintiff's affidavit asserts, *inter alia*, that "Andy Messer and Rick McGuire came out to Little Miami to work overtime." (Doc. 29, ¶ 6). Such assertions are uncorroborated and self-serving. Notably, uncorroborated, conclusory statements and self-serving allegations taken solely from Plaintiff's testimony cannot alone satisfy Plaintiff's burdens. *Mitchell v. Toledo Hosp*., 964 F.2d 577, 584 (6th Cir.1992). *See also Evans v. Jay Instrument & Specialty Co*., 889 F.Supp. 302, 310 (S.D.Ohio 1985) (holding that plaintiff's self-serving conclusory declarations of actual discrimination on the part of the defendant decision makers were insufficient to raise a triable issue of pretext).

There is no record evidence that Messer or McGuire worked overtime at Little

Miami during the relevant time frame.  To the contrary, Plaintiff's own deposition testimony confirms that she was the only storekeeper at Little Miami after her initial training period. (Doc. 20, PAGEID#2162).  Moreover, as noted by the City, operational need was the legitimate non-discriminatory reason why the City allocated overtime the way it did. Plaintiff has failed to provide any evidence that Ms. Smedley, who is also a female, or any other City decision maker, did not honestly believe that allocating overtime by need at a given work location was for anything other than operational need.

In sum, as noted above, pretext can be established by showing that the proffered reason: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 790–91 (6th Cir. 2006); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 805–06 (6th Cir. 1998).  Plaintiff has failed to establish any of these.

In light of the foregoing, Plaintiff has failed to rebut Defendant's legitimate non-discriminatory reasons for her denial of overtime and has failed to produce any evidence that Defendant intended to discriminate against plaintiff on the basis of gender.  *See Thurman*, 90 F.3d at 1166 (citing *Hicks*, 509 U.S. at 502) ("The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race.)" Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court. *Diaz v. Mitchell's Salon and Day Spa, Inc.*, Case No. 1:09-cv-882, 2011 WL 379097, * 7 (S.D. Ohio 2011) (J. Weber).  Plaintiff's unsupported

conclusions are insufficient to meet her burden of establishing that Defendant's proffered reasons for her denial of overtime were a pretext for racial discrimination.

### III.  Conclusion

For these reasons, **IT IS THEREFORE ORDERED THAT** Defendant's motion for summary judgment (Doc. 23) is **GRANTED;** and Defendant's motion to strike (Doc. 34) is **DENIED.**  As no matters remain pending, this case is **CLOSED**.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge